# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THOMAS HAYES,

    Plaintiff,                                           Case No. 21-10447

v.                                                          Hon. Denise Page Hood

OFFICER SCHNIERS, OFFICER
KOSTIUK, CORPORAL BALLARD,
and CORPORAL FISCHER,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTIONS
## FOR SUMMARY JUDGMENT [ECF Nos. 22, 23]

**I.    INTRODUCTION**

On February 26, 2021, Plaintiff filed this 42 U.S.C. § 1983 action alleging the violation of his Fourth Amendment rights. In his one-count Complaint, Plaintiff alleges that four law enforcement officers used excessive force when arresting him. The four officers included: Officer Kostiuk, Corporal Ballard, and Corporal Fischer of the Dearborn Police Department (collectively, the "Dearborn Defendants") and Officer Schniers of Livonia Police Department, all apparently members of a Detroit Fugitive Apprehension Team. Presently before the Court are two motions for summary judgment, one filed by the Dearborn Defendants and one

1

filed by Schniers. Both motions are fully briefed. A hearing was held on March 8, 2023. For the reasons set forth below, the motions are denied.

## II. BACKGROUND

### A. Plaintiff's Version of the Facts

In both response briefs, Plaintiff's recitation of the facts consists only of the following:

> First, Plaintiff was initially struck [by a police truck] while he was running on foot [. . .]. At that point, Plaintiff gave up. He testified:
>
>> "I went, slid down to my knees, and put my arms up and said I would surrender."
>
> (See Plaintiff's deposition pg. 48; see Exhibit 1 attached [ECF No. 24, Ex. 1 at 47-48]).
>
> At that point in time, Plaintiff was kicked in the back which forced him to go to his stomach. As Plaintiff was lying on the ground, he was kicked multiple times by the officers. (See Plaintiff's deposition pags. 49-50; see Exhibit 1 attached [ECF No. 24, Ex. 1 at 49-50]). As a result, Plaintiff was diagnosed with a fractured shoulder.
>
> Plaintiff's son, Alexander Hayes who was an eyewitness, corroborates this testimony. He testified as follows:
>
>> A. I just recall him falling down because the cop car hit him. Him trying to get back up. He can't, so he goes back on his knees, puts his hands up behind his head. said "I surrender."
>
> BY MR. MENDELSOHN:

2

> Q. Did you see any officer do anything to bring him to the ground, other than what you say that the vehicle hitting him?
>
> A. Them kicking him. Stomping down on him.
>
> Q. Okay. And when you say – when you say you saw the officer or officers stomping down him, was your father upright on his knees or was he on the ground?
>
> A. He was on the ground.
>
> Q. Okay. And when he was on the ground, was he on his stomach.
>
> A. Yes.
>
> Q. Did you see any officer kick hm in the back and bring him to the ground?
>
> A. I have, yes.
>
> Q. When did you see that?
>
> A. When I was watching them kicking him each time to bring him down even more.
>
> Q. Okay. But when you saw them kicking him, he was already on the ground, correct?
>
> A. Yes. He was on his knees and then they kicked him even more to get him farther down.

ECF No. 24, PageID.441-42 (quoting ECF No. 24, Ex. 2 at 30-32).

### A. Defendants' Version of the Facts

On March 5, 2018, Officer John Kostiuk ("Kostiuk"), Corporal Andrew Ballard ("Ballard"), and Corporal Michael Fischer ("Fischer"), of the Dearborn Police Department, and Officer Jason Schniers of the Livonia Police Department (collectively "Defendant Officers"), received information regarding Plaintiff through an investigation by the Dearborn Special Operations Unit. The investigation had determined that Plaintiff had made threats against Representative Debbie Dingell via social media, and that he also had multiple outstanding misdemeanor warrants and a felony warrant from Kent County for Assault with a Dangerous Weapon. ECF No. 22, Ex. 1 at Bates 003; Ex. 2 at Bates 001; Ex. 3 at 14, 32-34; Ex. 4, at 13-14; Ex. 5 at Bates 001-002; Ex. 8 at 3. Defendant Officers also determined that Plaintiff had been renting a room at the Red Roof Inn located in the City of Taylor. ECF No. 22, Ex. 1 at Bates 003-004; Ex. 2 at Bates 001; Ex. 6 at 5. That evening, Defendant Officers proceeded to the Red Roof Inn based upon this information and located a silver Lexus SUV associated with Plaintiff in the parking lot of the Red Roof Inn.

Fischer contacted the motel manager who confirmed that Plaintiff had been renting a room but was being evicted due to damaging a bed in the room. Fischer was informed by the motel manager that Plaintiff would be returning to the motel that evening to pick up a refund check for the room. ECF No. 22, Ex. 1 at Bates

4

003-004; Ex. 2 at Bates 001-002.; Ex. 7 at 7. Defendant Officers were present and waiting in the parking lot of the Red Roof Inn that evening when Plaintiff, along with his wife and son, returned and parked in the lot near the motel office. ECF No. 24, Ex. 1 at Bates 004; Ex. 2 at Bates 001-002. Fischer observed Plaintiff exit the vehicle and enter the motel lobby, at which point members of the DFAT began approaching the motel lobby. *Id*. at Ex. 1 at Bates 004; Ex. 2 at Bates 002; Ex. 6 at 7.

Upon seeing officers approaching, Plaintiff ran out of the lobby of the Red Roof Inn and toward the parking lot of a Home Depot next door to the motel. At the same time, officers chased after Plaintiff yelling for him to stop and identifying themselves as police officers. ECF No. 22, Ex. 3 at 30; Ex. 7 at 8-9; Ex. 8 at 4. Plaintiff indicates that he ran from the motel lobby because he was trying to avoid the police officers:

> Q: So you were actively trying to avoid the police?
> A: Yes.
> Q: Were you avoiding them because of that felonious assault warrant?
> A: Yes.
> Q: And you were avoiding them because of that Debbie Dingell case?
> A: Yes.

ECF No. 22, Ex. 3 at 35-36. Plaintiff was staying at the Red Roof Inn to avoid apprehension by police for his outstanding warrants. *Id*. at 86.

After he reached the Home Depot parking lot, Plaintiff grabbed a shopping cart and pushed it toward Schniers. ECF No. 22, Ex. 9 at 23-24; Ex. 3 at 48-49 (Plaintiff testified that while he did not remember pushing a cart in front of any officers, he "could have" done so). Schniers caught up to Plaintiff, and Defendants maintain that Schniers tackled Plaintiff to the ground as Plaintiff continued running away from officers. ECF No. 22, Ex. 1 at Bates 004; Ex. 2 at Bates 002; Ex. 7 at 10-13. Once on the ground, and while he was on his back, Plaintiff actively resisted arrest by blocking Schniers's attempts to gain control and waving his arms in a defensive manner. *Id.* at Ex. 7 at 13, 28. Kostiuk testified that Plaintiff flipped onto his stomach, tucked his hands and arms under his body, and began kicking his legs up and down. *Id*. at 14, 16, 28. Kostiuk states he then applied two to three knee kicks to Plaintiff's outer thigh to gain control and take Plaintiff into custody. *Id*. at 16.

Defendants attest that, at no point did Plaintiff drop to his knees or put his hands up, and none of the officers on scene ever stomped or kicked Plaintiff. ECF No. 22, Ex. 7 at 13, 17; Ex. 4 at 16-17. Defendant Officers were eventually able to effectuate Plaintiff's arrest and take him into custody. ECF No. 22, Ex. 7 at 14-15. Dearborn Defendants testified that, after Plaintiff's arrest, and while he was

handcuffed, Plaintiff intentionally hit his head on the pavement multiple times. ECF No. 22, Ex. 1 at Bates 004; Ex. 4 at 9; Ex. 6 at 9; Ex. 7 at 32-33; Ex. 8 at 6.

Defendant Officers then took Plaintiff to the hospital, where he was treated for an abrasion to his right face, pain to his right clavicle and shoulder, a clavicle fracture, and a closed head injury. ECF No. 22, Ex. 10 at Bates 551 and 555. A CT scan of Plaintiff's head revealed "no acute intracranial hemorrhage or calvarial fracture." *Id*. at 555. Plaintiff claims that he sustained a broken clavicle and head injury during the course of his arrest. ECF No. 22, Ex. 3 at 69; Ex. 11 at 3.

## III. LEGAL STANDARD

### A. Rule 56

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. Qualified Immunity

All Defendants argue that they are entitled to qualified immunity, and the Court must consider whether Defendants are entitled to qualified immunity with respect to their alleged conduct in connection with Plaintiff's arrest. As recently stated by the Supreme Court:

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and quotation marks omitted).

Qualified immunity is a two-step process. *Saucier v. Katz*, 533 U.S. 194 (2001), overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009). First, the Court determines whether, based upon the applicable law, the facts viewed in a light most favorable to the plaintiff show that a constitutional violation has occurred. Second, the Court considers whether the violation involved a clearly established constitutional right of which a reasonable person in the defendant's position would have known. *Id.*; *Sample v. Bailey*, 409 F.3d 689 (6th Cir. 2005). The Court need not decide whether a constitutional violation has occurred if it finds that government official's actions were reasonable. *Jefferson v. Lewis*, 594 F.3d 454, 460 (6th Cir. 2010). Only if the undisputed facts or the evidence, viewed in a light most favorable to the plaintiff, fail to establish a prima facie violation of

clear constitutional law can this court find that the Defendants are entitled to qualified immunity. *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997).

Once a government official has raised the defense of qualified immunity, the plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (citation omitted). A plaintiff also must establish that each individual defendant was "personally involved" in the specific constitutional violation. *See Salehphour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) (unpublished) ("It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants").

## IV. ANALYSIS

The Court finds, as Plaintiff argues, that Defendants (in particular, the Dearborn Defendants) move the Court to find that Plaintiff and his son (Alexander Hayes) are not credible and adopt Defendants' version(s) of the facts. The Court, pursuant to the legal authority set forth above in Section III, does not engage in assessing credibility or accept as true a defendant's version of the facts on

summary judgment. In a matter such as the present one, the Court views all of the facts in a light most favorable to Plaintiff.

In this case, that view means that the Court must treat as fact that, during the course of the Defendants' chase of Plaintiff, Plaintiff was hit by a police vehicle and then "went, slid down to [his] knees, and put [his] arms up and said [he] would surrender." ECF No. 24, Ex. 1 at 47-48; Ex. 2 at 30-31. The Court also must treat as fact that: (a) Plaintiff was kicked/tackled in the back which forced him to go violently to the ground on his stomach and head, ECF No. 24, Ex. 1 at 49-50; Ex. 2 at 31-32; (b) as Plaintiff was lying on the ground, he was kicked multiple times by the officers, ECF No. 24, Ex. 1 at 50; Ex. 2 at 31-32; and (c) as a result, Plaintiff was diagnosed upon examination at Beaumont Oakwood Hospital hours after his arrest with a "[r]ight clavicle fracture" and a "closed head injury." ECF No. 22, Ex. 1 at Bates 009. The discharge notes from the same night indicate that the "head injury . . . does not appear to be serious at this time." ECF No. 22, Ex 1 at Bates 017. No further medical information was submitted.

The Court first analyzes, in light of those facts, whether there is any evidence to support a finding that Plaintiff's constitutional rights were violated. There is no dispute that Defendants had a reasonable basis to arrest Plaintiff based on the outstanding warrant for felonious assault and the alleged threats to

11

Congresswoman Debbie Dingell. Plaintiff also acknowledges that: (1) he was evading and actively fleeing from Defendants; and (2) Plaintiff understood Defendants to be law enforcement officers seeking to arrest him for the felonious assault warrant and/or the threats to Congresswoman Dingell.

Plaintiff contends that, even though Defendants had a legitimate basis to arrest him: (a) the prohibition on the use of force on a person who has surrendered was clearly established prior to 2010; and (b) even a person who initially flees law enforcement officers cannot be beaten and kicked, such that the use of force in this case was excessive "as a matter of law."

The Court starts with the initial seizure of Plaintiff (*i.e.*, taking Plaintiff to the ground). Defendants contend that Plaintiff has not presented evidence that any of Defendants heard Plaintiff state he said, "I surrender." In light most favorable to Plaintiff, however, the Court must find that Defendants could have heard Plaintiff make that statement because Alexander Hayes (who was further away than most, if not all, Defendants) heard Plaintiff make that statement.

Defendants next argue that Fourth Amendment law did not bar the use of a vehicle to pursue/hit Plaintiff or Schniers' right to tackle/kick Plaintiff when he was on his knees, even if Plaintiff had stated, "I surrender." Citing *Graham v. Connor*, 490 U.S. 386, 396 (1989). *Graham* requires a court to consider: (1) the

12

severity of the crime; (2) the potential threat posed; and (3) whether the subject had actively resisted, including flight. *Id.* "The ultimate question, however, is whether the totality of the circumstances justifies a particular sort of seizure." *Kent v. Oakland Cnty.*, 810 F.3d 384, 390 (6th Cir. 2016).

Plaintiff does not appear to contend that being hit by the truck constituted excessive force or even Defendants used a vehicle to take Defendant to the ground. *See* ECF No. 22, Ex. 3 47, 68-69; Ex. 10 at Bates 551, 555. Plaintiff also has not offered any evidence that the police vehicle that (may have) struck him was intentional. *Ewolski v. City of Brunswick*, 287 F.3d 492, 506 (6th Cir. 2002) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 496 (1989)) ("A violation of the Fourth Amendment requires the 'intentional acquisition of physical control' of a person by a state official."). The Court therefore concludes that, even if Plaintiff was hit by a police vehicle, such act alone would not constitute excessive force for Fourth Amendment purposes.

In a light most favorable to Plaintiff, however, when he was on his knees and had said he surrendered, at least one of the Defendants kicked Plaintiff in the back or tackled him to get him from kneeling on the ground, forcing Plaintiff's body to be slammed to the ground. The Court finds that, after weighing the *Graham* factors, such action creates a genuine dispute of material fact whether

13

Defendants used excessive force to bring Plaintiff to the ground. Although Plaintiff's alleged crimes (felonious assault warrant and threats to a member of U.S. Congress) were not insignificant, Plaintiff did not pose a potential threat when he was on his knees and had said he surrendered.

The Court next assesses whether there is evidence of a violation of Plaintiff's Fourth Amendment rights after Plaintiff was taken down but during the course of Defendants' arrest of Plaintiff. Defendants contend that any force used was objectively reasonable in light of the *Graham* three-part test. In a light most favorable to Plaintiff, and in reviewing the evidence he set forth in his response briefs, once Plaintiff was kicked/tackled to the ground, there is evidence that Defendants kicked and/or stomped on Plaintiff while he was on his stomach. The testimony of Kostiuk alone reflects that Kostiuk applied two to three knee kicks to Plaintiff's outer thigh to gain control and take Plaintiff into custody, ECF No. 22, Ex. 7 at 16, and Plaintiff may have otherwise been struck during the course of his arrest. *Id.* at 34-35

Dearborn Defendants argue that, even if Plaintiff was kicked or stomped by Defendant Officers, such actions would not be considered excessive force from the perspective of an officer in a tense, uncertain, and rapidly-evolving situation where the suspect has Plaintiff's history and acted as Plaintiff did that night. Dearborn

14

Defendants assert that Plaintiff has failed to present any evidence that he acquiesced to the authority or control of Schniers and/or the Dearborn Defendants. Defendants state that Plaintiff has offered no evidence contradicting the testimony of Defendant Officers that Plaintiff kicked his legs, blocked Schniers, or tucked his arms and hands under his body. Defendants state that the undisputed evidence clearly establishes that the force they used was objectively reasonable, as supported by their expert, whose opinion was not rebutted. ECF No. 22, PageID.95-96 (citing Ex. 12 at 2, 5, 7).

Defendants note that, prior to his deposition, Plaintiff never alleged that he was hit by a police vehicle. ECF No. 22, Ex. 3 at 43-44; Ex. 11 at ¶¶3 and 7; Ex. 13). Although he testified at one point that he was hit by the police vehicle, he later testified that he did not remember that and was instead told that by his wife and son. ECF No. 22, Ex. 3 at 68. Plaintiff testified that it was a pick-up truck, whereas Alexander Hayes testified that it was an SUV, "like a Ford Explorer." ECF No. 22, Ex. 9. Plaintiff says he was not knocked to the ground when hit by the police vehicle, but Alexander Hayes said Plaintiff was knocked to the ground. ECF No. 22, Ex. 3 at 47; Ex. 9 at 24-25. Defendants also state that the arrest occurred at 9:30 p.m., when it was dark outside, Alexander Hayes was standing 40

to 50 feet away from where Plaintiff was arrested, and the view of the scene was obstructed by pallets of equipment and other lawn supplies.

The Court notes Defendants' contention of inconsistency in testimony and other factors that might detract from the credibility of Plaintiff's evidence. The Court, however, concludes that these are matters of credibility and disputes between party evidence, such that there remains a genuine dispute of material fact for a reasonable jury to determine as to what version of events to believe with respect to Plaintiff's arrest, including whether the evidence of force used was excessive, in violation of the Fourth Amendment.

The Court now turns to whether Defendants are entitled to qualified immunity with respect to Plaintiff's claim that excessive force was used during the course of Plaintiff's arrest. Each individual officer in a multi-defendant case should be subject to a separate qualified immunity analysis regarding their own particular involvement. *Bishop v. Hackel*, 637 F3d 757, 767 (6th Cir 2011) (citing *Phillips v. Roane Cnty.*, 534 F3d 531, 542 (6th Cir 2008). Individualized assessments of each officer are required. *Id*.

Schniers does not concede that he struck Plaintiff after the take down, and he argues that Plaintiff has presented no evidence that Schniers struck, kicked, or stomped on Plaintiff. Kostiuk testified, however, that Schniers may have struck

16

Plaintiff after taking Plaintiff to the ground. Any such act would have occurred while Plaintiff was face down and in the course of a struggle to handcuff Plaintiff, during which time Plaintiff clenched his hands and arms under his body.  Schniers asserts that any such strikes would have been within the range of reasonable force to arrest but, even if not reasonable, qualified immunity requires dismissal because he was reasonably mistaken with the degree of force used to arrest Plaintiff. Citing *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018).  Schniers contends that Plaintiff's version of the facts is blatantly contradicted by the record such that no reasonable jury could accept Plaintiff's narrative. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  As noted above, however, the Court cannot reach such a conclusion when viewing the evidence in a light most favorable to Plaintiff.

      As Plaintiff testified, "I felt like I was on home plate on a grand slam where that – I felt a bunch of feet kicking me and stomping me.  I just heard many voices but I couldn't see who was doing it because they were – I was facing the pavement." ECF No. 22, Ex. 3 at 31.  Plaintiff states that he felt feet kicking him for "five or six seconds" while on his stomach. *Id.* at 49.  The testimony of Plaintiff's son, Alexander Hayes, likewise constitutes evidence that Defendants kicked and stomped on Plaintiff when he was on the ground. ECF No. 25, Ex. 2 at 31-32.

Based on the testimony of Plaintiff and his son, the Court concludes that, for purposes of summary judgment, Plaintiff has met his burden of submitting evidence that creates a genuine dispute of material fact as to whether Defendants violated Plaintiff's constitutional rights.

Even if there is a genuine dispute that Defendants violated Plaintiff's constitutional rights, Defendants claim that their conduct was not unlawful under clearly established law. Citing *Howse v. Hodous*, 953 F.3d 402 (6th Cir. 2020). In *Howse*, undercover officers suspected that the plaintiff may be engaged in criminal activity and gave him several commands which he disobeyed. A physical struggle ensued, and officers eventually tackled the plaintiff to the ground and struck him several times. While attempting to restrain the plaintiff, an officer was assaulted when he was struck by the plaintiff, who was attempting to resist arrest by grabbing at the officers and flailing about. *Id.* at 405-06.

Defendants argue that Plaintiff disobeyed the officers, fled the scene, pushed the shopping cart at Schniers, and when tackled to the ground, continued to resist arrest by kicking at the officers, blocking officers' attempts to gain control, and tucking his hands and arms under his body. Defendants assert that Kostiuk reasonably used knee strikes on Plaintiff in order to restrain him. Citing ECF No. 22, Ex. 3 at 30, 35, 36, 86 (Plaintiff's deposition); Ex. 7 at 10-18, 27-29, 32).

The Court finds that, viewing the evidence in a light most favorable to Plaintiff, Defendants are not entitled to qualified immunity because he was not resisting arrest. Tackling, kicking and striking a suspect when he is not resisting arrest (even if the suspect had previously resisted arrest) is prohibited under clearly established law. *See, e.g., Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012); *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006). As Defendants are not entitled to qualified immunity, the motions for summary judgment are denied.

## V.  CONCLUSION

For the reasons stated above,

IT IS ORDERED that the Motion for Summary Judgment filed by the Dearborn Defendants [ECF No. 22] is DENIED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Schniers [ECF No. 23] is DENIED.

May 23, 2023                              s/Denise Page Hood
                                          DENISE PAGE HOOD
                                          UNITED STATES DISTRICT JUDGE